IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 02-cv-00997-JLK-OES

MARK A. GARRISON, et al.,

Plaintiff,

vs.

LOG LANE VILLAGE, et al,

Defendant(s).

RECOMMENDATION FOR GRANTING OF
DEFENDANT HOLT'S MOTION FOR SUMMARY JUDGMENT

ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER

## I.  BACKGROUND AND SUMMARY OF RECOMMENDATION

The Complaint that was filed by counsel for plaintiffs in this lawsuit presents

claims from a number of different plaintiffs against different defendants for different

reasons.  Most of the other plaintiffs have reached settlements of their claims, and have

been dismissed from the suit.  The only plaintiffs whose claims still are at issue are the

Flores family and Vernon Jefferis.  These two sets of plaintiffs have different claims

against different defendants.

This present Recommendation is being issued in response to the "Motion to

Dismiss or in the Alternative for Summary Judgment" that has been filed by defendant

Holt, who is a police officer for the town of Log Lane Village.  The other defendants

have filed their own motion for summary judgment in regard to the claims of the Flores

family, and I address that motion in a separate Recommendation.

This plaintiff, Vernon Jefferis, claims in his portion of the Complaint that Officer Holt violated his rights under 42 U.S.C. § 1983 when Officer Holt conducted a traffic stop on June 21, 2001, that led to Jefferis's arrest and incarceration on three charges. Defendant's Exhibit A-3 is a copy of the two complaint forms that were completed by Officer Holt, reflecting the three charges that he alleged against Jefferis: (1) passed on the left when prohibited; (2) attempted to elude an officer; and (3) obstruction of an officer.

In the Complaint, Jefferis asserted the following as his claims:

> 68.  Vernon Jefferis alleges that Jon B. Holt and the Village of Log Lane violated his civil rights by arresting him.
>
> 69.  Vernon Jefferis alleges that Jon B. Holt falsely imprisoned him for a period of one day and caused him to suffer humiliation, and severe emotional distress as a result of his imprisonment and that said imprisonment was without due process of law.

Compl. ¶ 68 & 69.

Officer Holt construed Jefferis's Complaint as asserting one claim of violation of his Fourth Amendment protections against unreasonable search and seizure, or false arrest, and one claim of the tort of false imprisonment.  Jefferis also alleged a claim of "misconduct in office," but Jefferis announced in his Response that he was dismissing that claim.  Pltf's Resp. at 20.  Jefferis has not challenged defendant's construction and interpretation of his claims, and I will address them on the same basis that defense counsel has construed them.

Officer Holt argues in his motion that he is entitled to dismissal or summary

judgment for two reasons: (1) he is entitled to qualified immunity with regard to

Jefferis's claim of false arrest brought pursuant to § 1983, and (2) he is entitled to

absolute immunity with regard to the claim for the tort of false imprisonment pursuant to

the Colorado Governmental Immunity Act ("CGIA").  Colo.Rev.Stat. § 24-10-118(2)(a).

Jefferis filed two separate responses to Officer Holt's motion, one in which

Jefferis asserted his response to the motion to dismiss, and one in which he asserted

his response to the motion for summary judgment.  Although Officer Holt's argument

with regard to the application of the CGIA to the alleged tort of false imprisonment may

be subject to resolution as a matter of law, I conclude that his motion as a totality is

addressed more appropriately as one for summary judgment.  However, In addressing

defendant's motion for alternative relief, I have considered all of the arguments made

by Jefferis, regardless of the particular response in which they were raised.

**Summary of Recommendation**.  I conclude that the undisputed facts

demonstrate that Officer Holt is entitled to have summary judgment entered in his favor,

and that Jefferis has failed to show the existence of any genuine issue of material fact

that would prevent the entry of such judgment.  Thus, I recommend that defendant

Holt's Motion for Summary Judgment be granted, and that the claims against him be

dismissed.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where the "pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The evidence in the

record must be viewed in the light most favorable to the nonmoving party, and the

nonmovant must be allowed the benefit of all reasonable inferences to be drawn from

the evidence.  Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10TH Cir. 1985).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  This burden may be discharged by showing that there is

an absence of evidence to support the nonmoving party's case.  Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its

motion for summary judgment, the burden shifts to the nonmoving party, who "may not

rest on mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986).

A genuine factual issue is one that "can reasonably be resolved only by a finder

of fact because [it] may reasonably be resolved in favor of either party."  Id. at 250.

The substantive law identifies which facts are material.  Id. at 248.  A dispute over a

material fact is genuine when the evidence is such that a reasonable jury could find for

the nonmovant.  One of the principal purposes of summary judgment is to isolate and

dispose of factually unsupported claims or defenses, and the rule should be interpreted

in a way consistent with this purpose.  Celotex, 477 U.S. at 323-24.

## UNDISPUTED FACTS

### A

Officer Holt listed in his memorandum brief 27 facts that he asserted are

undisputed.  In his Response, Jefferis admitted all except 9 of those facts.  However, in denying the 9 facts, Jefferis failed to comply with the "Special Instructions Concerning Motions for Summary Judgment" contained in the "Pretrial and Trial Procedures" for District Judge John L. Kane.  Counsel for Jefferis certainly was aware of Judge Kane's requirements.  In a Minute Order from the judge of January 23, 2004, Judge Kane rejected Jefferis's Response to the motion for summary judgment, and directed him to re-file, because counsel for Jefferis had failed to comply with the Special Instructions.

In denying seven of Officer Holt's undisputed facts, Jefferis made specific reference to defendant's Exhibit A-2, which accompanied defendant's brief.  Exhibit A-2 consists of several pages of the testimony that Jefferis offered during his deposition, beginning with page 22 of the deposition.  However, counsel for Jefferis supports her denials of Officer Holt's undisputed facts with references to pages that were not a part of defendant's exhibit, specifically pages 11, 12, 14 and 15.  *See* Pltf's Resp. at ¶¶ 5, 6, 9, 13 15, 16, 25 & 27 ("Pltf's Resp" refers to plaintiff's response to summary judgment, except if noted otherwise); *and see* Deft's Reply at 1-3, noting the missing citations.  These pages also are not attached to Jefferis's Response. For two undisputed facts, Jefferis failed to provide any reference whatsoever to any citation.  *See* id., ¶¶ 14 & 26.

As a result of this failure, Jefferis's challenges to Officer Holt's undisputed facts are not supported by specific references to materials that are included with either party's exhibits.  Because Jefferis has failed properly to challenge Officer Holt's undisputed facts, those facts must be accepted as undisputed.

Jefferis included with his Response additional facts that he claimed to be

5

undisputed, *see* id. at ¶¶ 28-53, and additional facts that he claimed are disputed. Id. at ¶¶ 54-73.  Officer Holt admitted or denied various of the facts in each of the two sections.  However, Officer Holt objected to the fact that "many of Plaintiff's additional undisputed [or disputed] materials facts fail[ed] to comply with this Court's Procedural Memorandum by not providing reference to record evidence with citations to a specific page and line establishing the fact alleged in the paragraph."  Deft's Reply at 3 & 6, n's 2 & 3.

I agree that counsel for Jefferis failed in regard to many of her allegations of additional facts to provide specific references to evidence that is a part of the record of the summary judgment proceedings.  Specifically, counsel for Jefferis frequently failed to provide any references at all, and she again provided references to pages of Jefferis's deposition that were not included either in defendant's Exhibit A-2, or were not included as a part of Jefferis's Response.  Nevertheless, in drafting the undisputed facts contained in the next section, I have evaluated carefully the challenges raised by Jefferis, and I have recited the undisputed facts in light of those challenges.

**B**

Officer Holt's recitation of undisputed facts is premised upon its exhibits A-1 and A-2.  Exhibit A-1 consists of the affidavit of Officer Holt, and two police reports that he filed in conjunction with his arrest of Jefferis.  Because Jefferis did not depose Holt, Holt's affidavit is the only source of testimony from him.  Exhibit A-2 consists of a number of select pages of the deposition testimony of Jefferis himself.

The following facts were taken from the testimony that is contained in Jefferis's

deposition and Officer Holt's affidavit.  Jefferis has not properly challenged any part of the officer's affidavit.  However, I note that the testimony of Jefferis is in conflict with some of the allegations contained in Officer Holt's affidavit.  To that extent, some portions of the affidavit are in dispute, and I note those portions.

At the time of the events that gave rise to this case, Officer Holt was a police officer for the town of Log Lane Village, Colorado.  On June 21, 2001, he was returning to Log Lane Village from Fort Morgan Colorado.  At that time, he fell in behind the vehicle that was being operated by Jefferis.  Holt watched Jefferis's vehicle, and concluded, first, that Jefferis was tailgating the car that was proceeding in front of Jefferis.  Passing on that stretch of highway was prohibited by the presence of a double yellow line.  Officer Holt then observed Jefferis move his vehicle unto the right shoulder, in what Holt concluded was an effort to pass the other car on the right, and then pull back into the traffic lane.  Jefferis then repeatedly drove to the left of the double yellow line in an apparent attempt to look for an opportunity to pass the car in front of him.

Officer Holt considered Jefferis's erratic driving to be indicative of someone who was operating his car while under the influence of drugs or alcohol.  As the officer was considering this possibility, Jefferis moved to the left, crossed the double yellow line, and passed the car that was in front of him.  Officer Holt became concerned about the possibility of a collision between Jefferis and any oncoming traffic.  He turned on his lights and siren to warn traffic, and to pull over plaintiff.  He positioned his car in the center of the highway as part of an effort to warn any possible oncoming traffic.  In his

Response, Jefferis, denied that any oncoming traffic existed at the moment that he passed the other vehicle.  However, he failed to provide a specific reference to any part of the evidentiary record of the summary judgment proceedings.  *See* Pltf's Resp. at 2, ¶ 9.

Jefferis noticed the officer's lights and siren, and pulled over to the side of the road.  Officer Holt exited his vehicle, and approached Jefferis in his car.  Jefferis stated that he knew that a double yellow line meant that he could not pass, and stated further that he passed the other car because he was aggravated that the other car was driving slowly.  Deft's Mtn at 3, ¶ 11.  In his Response, Jefferis admitted that he told Officer Holt that he knew that he had passed in a no passing zone, but he denied that he had said to the officer that he had passed because he was aggravated.  Pltf's Resp. at 2, ¶ 11.  However, Jefferis failed to provide a specific reference to evidence that is a part of the record of the summary judgment proceedings.

Officer Holt obtained Jefferis's driver's license and vehicle information, and returned to the police car to write up a ticket.  Jefferis followed Holt to his patrol car, and asked which law enforcement agency he represented.  Officer Holt informed him that he was a police officer for Log Lane Village, and upon hearing this, Jefferis told Holt that he did not have the authority to stop him.  Jefferis demanded that Holt return his license and other information.

Officer Holt explained to Jefferis that in some circumstances, as a Colorado State Certified Peace Officer, he could enforce state law outside of his jurisdiction.  In his affidavit, Holt stated that he had been advised by the Chief of Police for Log Lane

8

Village, Larry Mueller, that certified peace officers in the State of Colorado have the authority to conduct a traffic stop outside their jurisdiction if they witness the commission of a misdemeanor or felony. Officer Holt also attested that he was aware that he had the authority to not only conduct a traffic stop, but to place a defendant under arrest if he witnessed the defendant commit a crime.

Jefferis went to his automobile, and then returned to the police car with one of his passengers, Travis Valles. Officer Holt stated in his affidavit that he became concerned for his safety, and that he told both of them to return to the other car, or they would be arrested for obstructing a peace officer. Mr. Valles returned, but Jefferis remained at Officer Holt's passenger side window, and continued to yell and pace back and forth. During his deposition, Jefferis denied that he was yelling, but admitted that he was challenging the officer's authority, and demanding the return of his papers.

Officer Holt informed Jefferis that he had radioed for a deputy sheriff, and that one was on his way. Jefferis responded, "Oh, yeah, sic them on me." Deft's Mtn at 4, ¶ 16. In his Response, Jefferis denies making this statement, but he fails to provide a reference to evidence that is a part of the record. Pltf's Resp. at 2, ¶ 16.

While Officer Holt was still completing the ticket for Jefferis, Jefferis returned to his car, got behind the wheel and drove off. Jefferis admitted that he left the scene of the traffic stop, and he testified that he did this as part of his effort to show Holt that he had no authority to keep Jefferis at the scene of the traffic stop.

With his lights and siren on, Officer Holt followed Jefferis until Jefferis pulled over for a second time. At that time, Jefferis became angry, and began yelling and

pointing his finger at Officer Holt.  He stated that Officer Holt was nothing but a citizen, and that he was going to have the officer arrested for harassment.

Sheriff's deputies Jeremy Powell and Jon Horton arrived at the scene of the second stop.  These deputies explained to Jefferis that Officer Holt, in fact, had the authority to pull him over.

Officer Holt completed the tickets that he had prepared, and presented them to Jefferis.  The tickets contained the three charges previously listed – passing where prohibited, eluding and obstruction – and directed Jefferis to appear before the County Court for Morgan County on August 1, 2001, at 8:30 a.m.  The officer asked Jefferis to sign the tickets where Jefferis would be stating that he would promise to appear on that date and time, and explained that by signing the ticket Jefferis was not making any admission of guilt.

Jefferis refused to sign the promise to appear, and stated again that he did not recognize Officer Holt's authority to give him a ticket.  Officer Holt attests that Jefferis twice stated to Holt  that he was not going to appear in court.  In his Response, Jefferis denied that he ever stated to the officer that he would not appear in court.  However, he failed to provide a specific reference to evidence that is a part of the summary judgment record.

Officer Holt then informed Jefferis that he was going to place him under arrest, and that Jefferis would be required to post a bond in order to ensure his appearance in court.  Jefferis was transported to the Morgan County Detention Center by Deputy Sheriff Powell, and he remained in jail overnight.  Jefferis admitted during his

deposition that he made no effort to post bond until after his one night in jail.

## DISCUSSION

Jefferis claims in this lawsuit that his rights to be free of unreasonable search and seizure under the Fourth Amendment were violated by the conduct of Officer Holt, and he was subjected to a false imprisonment by Officer Holt.  Jefferis claims that all of Officer Holt's conduct was unconstitutional because Holt was outside of his jurisdiction.

In his Motion for Summary Judgment, Officer Holt argues that he is entitled for two reasons to have Jefferis's claims against him dismissed.  First, he asserts that the Colorado statutes provided him with the authority to stop and arrest Jefferis, and the existence of the statute, in conjunction with other factors, entitles him to qualified immunity.  Second, he asserts that the claim of false imprisonment is a state law tort for which he is accorded absolute immunity pursuant to the GCIA.

### 1.  Qualified immunity.

Qualified immunity is a doctrine which "shields governmental officials performing discretionary functions from individual liability under 42 U.S.C. § 1983, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotations and citations omitted).  Initially, defendants must make a "prima facie showing of the 'objective reasonableness' of the challenged conduct."  Lewis v. City of Ft. Collins, 903 F.2d 752, 755 (10th Cir. 1990) (quoting Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988)).  Once defendants raise a prima facie basis for the defense of qualified

11

immunity, the plaintiffs face a "heavy" two-part burden to show that (1) the actions of the defendants violated a federal or statutory right, and (2) the right violated was "clearly established at the time of the conduct at issue." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995); Baptiste, 147 F.3d at 1255.  A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  If plaintiffs are unable to sustain their burden, the court will find that defendants are immune from liability.

Jefferis complains that Officer Holt lacked authority to arrest him because he was outside of his own jurisdiction of Log Lane Village.  Officer Holt argues that the Colorado statute authorizes him to stop and arrest in certain circumstances, even when he is outside of his jurisdiction.

The statute upon which Officer Holt relies states as follows:

> A peace officer shall have the authority to act in any situation in which a felony or misdemeanor has been or is being committed in such officer's presence, and such authority shall exist regardless of whether such officer is in the jurisdiction of the law enforcement agency that employs such officer or in some other jurisdiction with the state of Colorado . . . .

Colo.Rev.Stat. § 16-3-110(2).

Officer Holt testified that when he stopped Jefferis, he was aware and understood that this statute provided him with the authority to act in regard to his observation of criminal activity even though he was not within the geographical limits of Log Lane Village.  In addition, Officer Holt testified that his superior, the Chief of Police

for Log Lane Village, had informed him that he had the authority to act outside of the town, and officers of the Morgan County Sheriff's Department confirmed that he had this authority.

These undisputed facts constitute a "prima facie showing of the 'objective reasonableness' of the challenged conduct." Lewis, 903 F.2d at 755. The burden then shifts to Jefferis to meet his heavy two-part burden, that is, to show that Officer Holt violated a constitutional right, and to show that the right was clearly established. In the circumstances presented here, Jefferis has failed to meet the first part of the test, and has not shown that the officer violated his constitutional right to be free of unreasonable search and seizure.

The above-quoted statute provides clear authority to justify the actions of Officer Holt. However, Jefferis argues that the officer cannot rely upon this statute because it does not permit an officer in his shoes to stop a person upon a suspicion or belief that probable cause exists to believe that a crime may have been committed. Pltf's Resp. At 11. Jefferis admits that an officer who is acting outside of his jurisdiction has the authority under the statute to stop a person if the person is observed to have committed a misdemeanor or felony in the presence of the officer. But Jefferis argues that for the protections of this statute to come into play, the officer "must have conclusive evidence, i.e., 'know' that a crime has been committed." Id. In Jefferis's view, Officer Holt lacked the authority to stop him for a traffic infraction because he only had probable cause, and did not possess "conclusive evidence" that Jefferis was committing the crime of Driving While under the Influence.

13

Jefferis does not provide a citation for any statute or case that states that an officer who acts outside of his jurisdiction must have "conclusive evidence" in order to justify a traffic stop.  Obviously, no such citation exists.  No court has ever held that an officer's stop or arrest of an individual lacks legal justification unless the officer was in possession of "conclusive evidence" that the individual had committed a crime.

The law is well-established in Colorado that "[a] police officer may stop a motorist for the purpose of investigating the circumstances of the motorist's driving behavior when the officer has a *reasonable suspicion* that the driver has committed a traffic violation."  Nefzger v. Colorado Dept. of Revenue, 739 P.2d 224, 229 (Colo. 1987) (officer's observations of defendant's vehicle weaving from side to side justified traffic stop).  In determining the validity of an investigatory stop, "the first inquiry is whether there were specific and articulable facts known to the police officer which, taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity so as to justify the intrusion into the individual's personal security." Peterson v. Tipton, 833 P.2d 830, 832 (Colo. App. 1992) (officer's observations of defendant's vehicle veering into the gutter three times within several blocks provided reasonable suspicion, justifying the stop).

The Tenth Circuit Court of Appeals has ruled that the constitutionality of a traffic stop must be weighed in light of the following test:

> a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.  It is irrelevant, for purposes of Fourth Amendment review,

14

> whether the stop in question is sufficiently ordinary or
> routine according to the general practice of the
> police department or the particular officer making the stop.  It is
> also irrelevant that the officer may have had other subjective
> motives for stopping the vehicle.  Our sole inquiry is whether
> this particular officer had reasonable suspicion that this
> particular motorist violated any one of the multitude of
> applicable traffic and equipment regulations of the
> jurisdiction.

United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (internal quotations and citations omitted) (holding that officer was justified in stopping a vehicle that he observed to swerve from side to side, and to straddle the center line); United States v. Cook, 25 F.Supp.2d 1167 (D.Colo. 1998) (park ranger was justified in stopping a vehicle that appeared to be traveling at an excessive rate of speed, and swerved).

Officer Holt testified that he observed Jefferis's vehicle tailgating another car, and observed Jefferis weave first unto the shoulder and then back across a double yellow line that signified a no passing zone.  The officer then observed Jefferis cross the yellow line and pass the other vehicle.  Officer Holt concluded that Jefferis's erratic driving was indicative of someone who was driving while under the influence of alcohol.  He turned on his lights and siren both to initiate his traffic stop as well as to warn any cars that may appear from the opposite direction.

These facts provided Officer Holt with a "reasonable and articulable suspicion" that Jefferis had violated a traffic law, i.e., passing where prohibited, and that Jefferis may have been driving while under the influence of drugs or alcohol.  That Officer Holt later concluded that Jefferis was not intoxicated does not invalidate the traffic stop.  To justify the stop under either Colorado law or the Fourth Amendment, Officer Holt

needed only a reasonable suspicion that Jefferis had violated a law.

Jefferis argues that the Colorado Supreme Court has ruled that the statutes that permit officers to make extra-territorial arrests must be strictly construed. Pltf's Resp. at 11, *citing* People v. Wolf, 635 P.2d 213 (Colo. 1981). In his view, an officer who acts in his home jurisdiction may conduct a traffic stop upon a reasonable suspicion of criminal activity, but if the officer happens to be outside of his jurisdiction he must have more than a reasonable suspicion, and even more than probable cause. Jefferis argues that an officer may make an extra-territorial traffic stop only if the evidence of criminal activity is conclusive.

Granting to Jefferis his point that the statutes should be strictly construed, the Wolf case has no application here. The Wolf case involved the interpretation and application of the limitations on arrest powers that are contained in § 16-3-106 of the statutes. That statute allows an officer to make an arrest outside of his jurisdiction only if he is in "fresh pursuit" of any alleged offender. Colo.Rev.Stat. § 16-3-106. This case involves the application of § 16-3-110(2), which permits an officer to act outside of his jurisdiction in regard to any criminal activity that is committed in his presence.

Even if the Wolf case applied here, it presents no support for Jefferis's argument. In Wolf, the Supreme Court acknowledged that the conduct of the police officers was a violation of the provisions of the statute, because the police were outside of their jurisdiction and were not in fresh pursuit of their suspect. The Court refused nevertheless to find that the defendant's constitutional rights had been abridged.

In the Wolf case, Denver police officers conducted an investigation of a

16

suspected purchaser of stolen merchandise at his place of business in Adams County. They set up two transactions between an informant and the suspect at that location, and monitored their conversations through a radio attached to the informant.  The investigation continued over a five hour period and culminated in the suspect's arrest by the Denver officers at the suspect's place of business in Adams County.  No warrant was obtained.  The Supreme Court held that these facts demonstrated that the Denver police did not have statutory authority to arrest the suspect.

Even given the rather egregious nature of these facts, the Supreme Court concluded that the officers had probable cause for defendant's arrest, and concluded that the arrest did not offend constitutional restraints on unreasonable seizures.  Id. at 217.  The Court therefore declined to order that the evidence seized from the defendant be suppressed.  Id.  As the Supreme Court pointed out later in People v. Hamilton, "Violations of statutory provisions [regarding arrest powers] are not *per se* violations of constitutionally protected rights."   666 P.2d 152, 155 (Colo. 1983) (holding that arrest of defendant pursuant to a warrant did not deprive him of his constitutional rights, even though the police were outside of their jurisdiction and exceeded their statutory authority).

Here, Officer Holt clearly was within the authority that is provided to him under the terms of § 16-3-110(2) of the statutes.  He observed Jefferis's vehicle weaving onto the shoulder and over the double yellow line, and then watched as Jefferis crossed the double yellow line to pass a car in front of him.  These facts are sufficient to provide any officer with a reasonable articulable basis to suspect that Jefferis may have been

17

driving while under the influence.  Contrary to Jefferis's view, Officer Holt was not required to have "conclusive evidence" to justify the stop.  When an officer is outside of his jurisdiction and observes criminal activity, the officer is entitled to act the same as if he was standing in the shoes of an officer who is in his home jurisdiction.  The tests for the making of warrantless arrests or traffic stops are neither higher nor lower for officers who are acting outside of their home jurisdictions.

Officer Holt's initial detention of Jefferis was merely a temporary detention for the purposes of a traffic stop.  Subsequently, after Officer Holt personally observed Jefferis obstruct his efforts to attempt to ticket him, observed Jefferis attempt to elude him, and learned from Jefferis that he would not promise to appear in court, he then made the decision to make a custodial arrest.  Officer Holt himself did not make the custodial arrest of Jefferis.  Rather, the sheriff's deputies from the "home" jurisdiction actually performed this function.  *See, e.g.,* People v. Florez, 680 P.2d 219, 223 (Colo. 1984) (holding in a case involving § 16-3-106 that, absent fresh pursuit, officers acting outside their territorial jurisdictions must obtain the aid of local officers who have authority to make arrests in the foreign jurisdiction).

All of the above discussion reflects that Officer Holt did not violate Jefferis's rights to be free of unreasonable seizure.  However, even if Jefferis's rights somehow were violated, Officer Holt is entitled to qualified immunity.  "Police officers . . . sued in their individual capacity are entitled to qualified immunity when they could not reasonably have known that their challenged actions violated the law."  Ross v. Neff, 905 F.2d 1349, 1354 (10th Cir. 1990), *citing* Anderson v. Creighton, 483 U.S. at 639.

18

Officer Holt's actions certainly fall within the express terms of § 16-3-110(2). Jefferis argues nevertheless that the officer should be held liable for a violation of Jefferis's rights because of some alleged legal requirement that Officer Holt could only act if he possessed "conclusive evidence." For Officer Holt to be held liable under § 1983, Jefferis must demonstrate that the provision for "conclusive evidence" was clearly established at the time that the officer conducted his traffic stop of Jefferis.

> [W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken.

Anderson v. Creighton, 483 U.S. 639 (internal quotations omitted). And "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Romero v. Fay, 45 F.3d at 1476 (*citing* Hunter v. Bryant, 502 U.S. 224, 227 (1991), *quoting* Anderson v. Creighton, 483 U.S. at 674. Jefferis has pointed to no source and no evidence that would show that this so-called constitutional right to be detained only upon a showing of "conclusive evidence" was clearly established.

**In summary**, Jefferis has failed to show the existence of a genuine issue of material fact to support his claim that he was falsely arrested, and the undisputed evidence demonstrates that the traffic stop and arrest conducted by Officer Holt, with the assistance of the Morgan County Sheriff's deputies, was lawful. Additionally, Jefferis has failed to meet his burden to demonstrate the violation by Officer Holt of a right possessed by Jefferis that was clearly established at the time that Jefferis was

stopped and arrested.  For that reason, Officer Holt is entitled to qualified immunity.

For both of these reasons, Officer Holt is entitled to have his Motion for Summary

Judgment granted, and the claim of false arrest dismissed.

### 2. False imprisonment.

Jefferis's claim of "false imprisonment" is difficult to understand.  Jefferis claims

in his Complaint that Officer Holt "falsely imprisoned him for a period of one day. . . ."

Compl. at ¶ 69.

False imprisonment is a state law tort, and the elements of the claim are as

follows:

> [T]o confine one intentionally without lawful privilege and
> against one's consent within a limited area for any
> appreciable time, however short, constitutes the tort of false
> imprisonment.

Blackman for Blackman v. Rifkin, 759 P.2d 54, 58 (Colo.App. 1988), *citing* 1 F. Harper

& F. James, *The Law of Torts* § 3.7 (O. Gray 2d ed. 1986), and *CJI-Civ.2d* 21:1 (1980).

Jefferis's claim is defective for a number of reasons.  First, Officer Holt did not

"imprison" Jefferis.  He was imprisoned by the Morgan County Sheriff.  Second, neither

Officer Holt nor the Morgan County Sheriff can be liable for a false imprisonment if the

initial arrest was lawful.

> A police officer may arrest a person without a warrant if he
> has probable cause to believe that person committed a
> crime.  Probable cause exists if facts and circumstances
> within the arresting officer's knowledge and of which he or
> she has reasonably trustworthy information are sufficient to
> lead a prudent person to believe that the arrestee has
> committed or is committing an offense.

Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (*citing* Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Both because Jefferis had committed a misdemeanor in the presence of Officer Holt, and because Jefferis refused to sign on the complaint that he promised to appear in court, his arrest by the officers was lawful.  *See* Colo.Rev.Stat. § 42-4-1415 (eluding is a class two misdemeanor traffic offense, carrying a possible jail punishment of 10 to 90 days in jail); § 42-4-1701 5(b) (police officer may arrest if the party refuses to accept service of a penalty assessment); 42-4-1706(2) (party may be arrested for any traffic offense if the party refuses to give a written promise to appear); *see also* People v. Patnode, — P.3d — , 2005 WL 1903799 at * 3 (Colo.App. 2005) (holding that persons may be arrested and searched if they have committed a misdemeanor traffic offense for which arrest is authorized).

Even if the officers lacked probable cause, Officer Holt was working in his capacity as a police officer for a public entity, and as such he is afforded immunity from liability for torts under the Colorado Governmental Immunity Act ("CGIA").

> (1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section.

Colo.Rev.Stat § 24-10-106(1).

Jefferis argues that the CGIA does not apply here because "this case was brought in the United States Federal Court, on a claim under Federal Law, and those statutes do not apply to this cause of action."  Pltf's Resp. at 20.  Jefferis's argument might be correct if he had brought a claim under federal law, but he has alleged a claim

21

for false imprisonment, and no such claim exists under federal law.  It is a tort under the laws of the State of Colorado.

Jefferis argues that Officer Holt is not entitled to the protections of the CGIA because his conduct was "willful and wanton."  Willful and wanton conduct means "'conduct purposefully committed that the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others.'"  Davis v. Paolino, 21 P.3d 870, 873 (Colo.App. 2001), *quoting* Moody v. Ungerer, 885 P.2d 200, 204 (Colo. 1994) (holding that the conduct of state trooper was not willful and wanton when he stopped the driver of a county road grader for impeding traffic, retained his driver's license and directed him to the county shop, where the trooper complained to the driver's supervisor about the driver's conduct) ; *see also* Pettingell v. Moede, 271 P.2d 1038, 1042 (Colo. 1954) (as used in the automobile guest statute, willful and wanton conduct is conduct that is "wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil"); *Black's Law Dictionary* 1434-35 (5th ed. 1979) ("In order to constitute 'willful and wanton' misconduct, act or omission must be not only negligent, but exhibit conscious disregard for safety of others.").

Jefferis makes the conclusory statement that Officer Holt's conduct was willful and wanton, but she points to no facts or evidence that support her assertion.  Nothing about the officer's conduct reflects that it was done "heedlessly and recklessly," or exhibited a "conscious disregard" for the "rights, feelings and safety of others."

**In summary**, Jefferis has failed to demonstrate the existence of genuine issues

of material fact in regard to his state law tort claim for false imprisonment, has failed to demonstrate that this claim is a federal claim, and has failed to demonstrate that Officer Holt lacked probable cause or legal justification to support the arrest of Jefferis. Additionally, under the provisions of the CGIA,  Officer Holt is immune from liability for this state law tort.

## RECOMMENDATION

For all of the above reasons, I RECOMMEND that District Judge John L. Kane GRANT Defendant Holt's Motion to Dismiss or the in the Alternative for Summary Judgment [filed December 30, 2003].  I further recommend that he treat defendant Holt's motion as a motion for summary judgment, that he enter summary judgment in favor of defendant Holt and that he DISMISS the claims that Jefferis has alleged against him.

Dated at Denver, Colorado, this day of:  December 16, 2005

BY THE COURT:

s/ O. Edward Schlatter

_____
O. Edward Schlatter
United States Magistrate Judge