IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 02-cv-00997-JLK-OES

MARK A. GARRISON, et al.,

Plaintiff,

vs.

LOG LANE VILLAGE, et al,

Defendant(s).

RECOMMENDATION THAT SUMMARY JUDGMENT
BE GRANTED ON MOTION FILED BY
ALL DEFENDANTS EXCEPT HOLT

ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER

## I.  INTRODUCTION AND BACKGROUND

Plaintiff has brought this suit pursuant to 42 U.S.C. § 1983.  In the particular

portion of her Complaint that is presently at issue, she has alleged that she and her

children were removed from their residence by municipal officials of Log Lane Village,

and that their home was seized.  *See* Compl. At ¶¶ 110-125.  Plaintiff has named the

municipality of Log Lane Village, and various elected officials.  She is attempting to sue

them both in their official as well as their individual capacities.  Plaintiff seeks both

injunctive relief and monetary damages.  Plaintiff Elizabeth Flores is the mother of the

other Flores plaintiffs, and because she is the only plaintiff who is an adult, I will refer

to plaintiffs in the singular, that is, as "plaintiff."

The Complaint that was filed by counsel for plaintiffs presents claims from a

number of different plaintiffs against different defendants for different reasons.  Most of

the other plaintiffs have reached settlements of their claims, and have been dismissed from this suit.  The only plaintiffs whose claims still are at issue are the Flores family and Vernon Jefferis, and these two sets of plaintiffs have different claims against different defendants.

The claim that has been brought by the Flores family is asserted against all of the named defendants with the single exception of Jon Holt, who is a police officer for Log Lane Village.  Jon Holt is a defendant only in regard to the claim that has been brought by Vernon Jefferis.  For that reason, my references to "the defendants" in this recommendation is a reference to all of the defendants except Holt.

This present Recommendation is being issued in response to the Motion for Summary Judgment that has been filed by all of the defendants except Holt.  Defendant Holt, who is a police officer with the town of Log Lane Village, has filed his own motion for summary judgment in regard to the claims against him by Jefferis, and I address that motion in a separate Recommendation.

The Motion for Summary Judgment filed by defendants argues that summary judgment should be granted for the following reasons: (1) plaintiff is unable to show a violation of her constitutional rights, and defendants are therefore entitled to qualified immunity; (2) plaintiff has failed to state a claim that is cognizable under § 1983; (3) plaintiff has failed to show personal participation by the majority of the individual defendants; (4) Log Lane Village is not a "person" for purposes of suit under § 1983. And, finally, defendants allege that plaintiff never had a factual basis for filing this lawsuit, and that her claim against these defendants is frivolous and groundless.  They

2

assert that they are entitled to the attorney fees and costs that were incurred in the defense of this matter, pursuant to 42 U.S.C. § 1988.

**Summary of Recommendation.** I agree with defendants.  Plaintiff has not only failed to present any facts that would demonstrate the existence of any genuine issue of material fact, she has failed to present any facts whatsoever to support the claim that she has alleged against these defendants.  For that reason, I recommend that defendants' Motion for Summary Judgment be granted.

Plaintiff has presented no factual basis for the bringing of this lawsuit.  I therefore further recommend that defendants' be awarded the fees and costs that they incurred in defending against it.  Because the determination of a factual basis for a lawsuit is the responsibility of the attorney who files it, and because Sara Allen, counsel for plaintiff, clearly failed in this responsibility, I recommend that the attorney fees and costs be assessed her, and not her clients.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The evidence in the record must be viewed in the light most favorable to the nonmoving party, and the nonmovant must be allowed the benefit of all reasonable inferences to be drawn from the evidence.  Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10TH Cir. 1985).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  This burden may be discharged by showing that there is

an absence of evidence to support the nonmoving party's case.  Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its

motion for summary judgment, the burden shifts to the nonmoving party, who "may not

rest on mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986).

A genuine factual issue is one that "can reasonably be resolved only by a finder

of fact because [it] may reasonably be resolved in favor of either party."  Id. at 250.

The substantive law identifies which facts are material.  Id. at 248.  A dispute over a

material fact is genuine when the evidence is such that a reasonable jury could find for

the nonmovant.  One of the principal purposes of summary judgment is to isolate and

dispose of factually unsupported claims or defenses, and the rule should be interpreted

in a way consistent with this purpose.  Celotex, 477 U.S. at 323-24.

### III.  PLAINTIFF'S ISSUES OF FACT OR UNDISPUTED FACTS

In presenting their list of undisputed facts, defendants complied with the "Special

Instructions Concerning Motions for Summary Judgment" contained in the "Pretrial and

Trial Procedures" for District Judge John L. Kane.  Plaintiff did not.  Counsel for plaintiff

certainly was aware of Judge Kane's requirements surrounding summary judgment.  In

a Minute Order from the judge of January 23, 2004, her Response to the motion for

summary judgment that she filed in regard to Vernon Jefferis was rejected, with

instructions that she comply with the requirements.

4

### A.  Plaintiff's admissions and denials

### of defendants' undisputed facts.

Plaintiff's admissions and denials of undisputed facts are defective and unacceptable, for the following reasons:

First, plaintiff admitted, with only a very few exceptions, virtually every undisputed fact that was listed by defendants in their brief.  However, contrary to Judge Kane's instructions, plaintiff added to almost every admission a bald statement, without documentation, that each of the undisputed facts is immaterial to the case.

Second, on the few occasions that plaintiff denied the undisputed fact presented by defendants, she failed to provide a "specific reference" to evidence in the record that would support her claim that a genuine issue exists with regard to the alleged fact.  *See* Pltf's Resp. at ¶¶ 15 & 18.

Third, plaintiff supported her assertions of undisputed fact by referring almost exclusively to her own statements in an affidavit of herself that she submitted as an attachment to her Response to the Motion for Summary Judgment.  I conclude below that her affidavit is an effort to create a sham issue of fact, and should be stricken.

Fourth, plaintiff presented exhibits other than her affidavit to support her assertion in regard to two of her allegedly undisputed facts, but her two particular statements of undisputed facts so badly misconstrue the contents of the exhibits as to cause me to question the credibility of counsel.  *See* id. at 25 & 26.

And, fifth, in denying the undisputed nature of two of defendants' facts, plaintiff relied upon her own affidavit in support of her assertions.  As noted above, I will strike

that affidavit in the next section.

### B.  Order striking plaintiff's affidavit.

Plaintiff attached to her Response to the Motion for Summary Judgment her own affidavit.  That affidavit consists of 32 numbered paragraphs, and is apparently plaintiff's effort to present the facts and circumstances surrounding her alleged removal from her home as she sees them.

Defendants point out in their Reply that plaintiff was deposed for two days. However, in her Response to defendants's motion, plaintiff nowhere points to a single portion of her deposition to support any of the factual claims or arguments that she presents, as though she was never deposed at all.  Instead, she relies entirely upon the contents of her affidavit.  Defendants in their Reply point to examples in which the contents of plaintiff's affidavit differs from or contradicts the answers she provided during her deposition.  *See, e.g.,* plaintiff's allegedly undisputed facts 9, 10 & 14, and defendants' Reply.  Defendant argues that plaintiff's affidavit should be disregarded, because it represents an effort by plaintiff to create sham issues of fact.

The Tenth Circuit Court of Appeals has outlined three factors that a court should consider in determining whether a supplemental affidavit is an effort to create a sham issue of fact. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001).  The Court instructs courts to consider the following: (1) Was the affiant cross-

examined during her earlier testimony?  (2) Did the affiant have access to the pertinent

evidence at the time of her earlier testimony?  And, (3), does the earlier testimony

reflect confusion which the affidavit attempts to explain?  Id; see also Franks v. Nimmo,

796 F.2d 1230, 1237 (10th Cir. 1986) (holding that an affidavit that contradicts earlier

sworn testimony should be disregarded only if it "constitutes an attempt to create a

sham fact issue").

Plaintiff has made no showing that she should be entitled to substitute the

contents of her deposition with an affidavit.  First, counsel for plaintiff not only had the

opportunity to question plaintiff during her deposition, she did ask questions.  Second,

plaintiff makes no showing either that she lacked access to any pertinent evidence, or

was without knowledge of any evidence, at the time of her deposition.  And, third,

plaintiff makes no showing that she is attempting in her affidavit to explain any

confusion that arose during her deposition.

In a dispute involving alterations to deposition testimony under Fed.R.Civ.P.

30(e), the Tenth Circuit remarked that "[a] deposition is not a take home examination."

Garcia v. Pueblo Country Club, 299 F.3d 1233, 1242 (10th Cir. 2002).  Plaintiff is not

entitled to take the deposition questions home, so to speak, come up with new or

revised answers that are not subject to follow up or clarifying questions by opposing

counsel, and then ignore the contents of her deposition.

In Garcia, the Court was addressing the extent to which deponents are entitled

to use Rule 30(e) to correct their deposition testimony.  It concluded that under that

rule, corrections to deposition testimony are proper only when "the reporter [has made]

7

a substantive error, i.e., he reported 'yes' but I said 'no,' or a formal error, i.e., he

reported the name to be 'Lawrence Smith' but the proper name is 'Laurence Smith.'" Id.,

n. 5, quoting Greenway v. International Paper Co., 144 F.R.D. 322, 325 (W.D.La. 1992)

(holding that Rule 30(e) may not be used to alter what has been said under oath); see

also, e.g., Coleman v. Southern Pac. Transp. Co., 997 F.Supp. 1197, 1205 (D.Ariz.

1998) (a change in a deposition statement does not eradicate the deponent's original

answers); S.E.C. v. Parkersburg Wireless, L.L.C., 156 F.R.D. 529, 535 (D.D.C. 1994)

(noting modern trend in which courts do not allow a party "to make any substantive

change she so desires" in deposition testimony); Rios v. Bigler, 847 F.Supp. 1538,

1546-47 (D.Kan. 1994) (stating that the court will consider only those changes that

clarify the deposition, and not those which materially alter it).

However, in the circumstances presented here, plaintiff is not even making an

effort to "correct" her deposition testimony.  She is simply ignoring her deposition

testimony, and attempting to provide a better version of the events as she sees them –

without the nuisance of questions from opposing counsel.

Plaintiff's affidavit clearly is an attempt to create sham issues of fact.  For that

reason, I will strike the affidavit and ignore any so-called representations of undisputed

fact that are made in reliance upon it.

Plaintiff cannot be heard to argue that some of the statements that she makes in

her affidavit merely repeat what she stated during her deposition, and that the court

should review the deposition to determine whether her allegedly undisputed fact has

support in the record.  Neither counsel for defendants nor the court are required to root

about in a deposition looking for the facts that plaintiff might be thinking about as possible support for her claims for relief.  Indeed, that is the express purpose for Judge Kane's instruction to counsel to provide specific references to the part of the record upon which the party relies.  The Tenth Circuit has held that "[w]ithout a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence. . . " that will support a party's claims.  <u>Gross v. Burggraf Construction Co.</u>, 53 F.3d 1531, 1546 (10th Cir. 1995); *see also*, <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (judges have no responsibility "to scour the record" in search of the facts upon which a party relies); <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992) (same).  On a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record.'" <u>Cross v. Home Depot</u> * * * *quoting* <u>Downes v. Beach</u>, 587 F.2d 469, 472 (10th Cir. 1978); *see also* <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

## C.  Plaintiff's remaining undisputed facts.

Once plaintiff's affidavit is removed from the picture, plaintiff has only two allegedly undisputed facts for which she provides a "specific reference" to evidence in the record.  The two facts, mentioned above, are her paragraphs 25 and 26.  In paragraph 25, she states that "[t]he Log Lane Village City Counsel [sic] through the Village Clerk Lorraine Herbel . . . refus[ed] to allow Mrs. Flores possession of her

9

property," and attaches Ms. Herbel's letter as an exhibit.  In paragraph 26, she states

that the attorney for Log Lane Village, David Brougham, "also stated that Log Lane

Village refused to return the home and refused to provide a statement of 'code

violations,'" and attached Mr. Brougham's letter as an exhibit.  However, plaintiff badly

mis-states or misinterprets the contents of the Herbel letter, and completely

misrepresents the contents of the Brougham letter, leaving these two allegedly

undisputed facts with non-existent or weak support in the record.

### D.  Summary of plaintiff's undisputed facts.

In the final analysis, plaintiff has failed properly to raise any genuine issues with

regard to any of the undisputed facts presented by defendants, and has failed to

present any undisputed facts that are supported by the exhibits that she has attached.

For that reason, the court must accept the recitation of the undisputed facts that has

been submitted by defendants as just that, the totality of the undisputed facts upon

which summary judgment will rise or fall.

### IV.  DEFENDANTS' STATEMENT OF UNDISPUTED FACT

The undisputed facts are recited by defendants at pages 1 through 7 of their

brief.  The defendants provided citations to the evidence in the record that supports

their claim that the facts are undisputed, but given the present circumstances in regard

to undisputed facts, I need not repeat those citations here.

Douglas Hamik, who is not named as a defendant in this action, was employed

by the Morgan County Department of Human Services as an intake worker responsible

for the handling of investigations of abuse and neglect of children.  On March 7, 2002,

10

Hamik was assigned by his supervisor to investigate the residence of plaintiff and her family.  The Department had received reports that involved broken windows, cold weather and the children.

Hamik referred to this type of assignment as a "home welfare check," which were usually conducted without announcing them to the subjects in advance.  In matters of this nature, he typically asked for a police officer to accompany him to the residence, primarily for his own safety or to keep the peace.  The officer who accompanied him was defendant Larry Mueller, the Chief of Police for Log Lane Village.

Defendant Sylvia McKie, who served as the Mayor of Log Lane Village, also served as the alternate building official, or inspector.  Because of the concerns that were expressed in regard to possible building violations, she accompanied Hamik and Mueller to the Flores residence.

Plaintiff answered Hamik's knock at her door, and Hamik explained that he was there because of concerns that had been raised in regard to broken windows and abuse issues.  Hamik and the others were allowed by plaintiff to enter the home, and Hamik commenced his inspection, accompanied by Mueller and McKie.

Upon entering the home, Hamik observed plaintiff, her daughter and her daughter's newborn baby, one or two of plaintiff's children, and an unknown person named Janell Green, who was asked by Hamik to leave from the rooms that he was inspecting.  Hamik discovered that the home consisted of two trailers that were placed side-by-side, and he referred to the two parts as the "old part" and a "newer part."  The two parts were inadequately joined, and where they came together – or, rather, did not

11

come together – air could enter the home. Hamik was conducting his inspection in early March, and he noted that temperatures had been cool during recent days. He also observed windows that were broken, and noted that air could, and did, enter the home through the empty or inadequately covered window areas.

In areas where children appeared to engage in activities, Hamik observed wiring hanging from the ceiling and animal feces on the floor, including in areas where children could walk or crawl. In the old part, he saw a toilet that had a broken bowl, and was continuously running. He also observed a hole going through the wall of the trailer into the backyard.

Plaintiff's son slept in one of the bedrooms, and Hamik observed that the son had no bed upon which to sleep. Instead, he just had blankets, and slept on the floor. The room had a broken window, and was not serviced by any electricity. In fact, electricity was run from the old part to the new part by means of extension cords. The old part contained exposed electrical wires. For certain portions of the residence, no lighting existed, and Hamik could only observe the rooms by using a flashlight.

Heat for the two trailers was produced by a single furnace located in the old part. Hamik was concerned that the heat had no way to reach from the old part to the newer part.

Ultimately, Hamik concluded that the residence was unsafe, filthy, open to the elements and not habitable, particularly for young children. He testified that he made this decision on his own, in his capacity as an intake worker for the Department of Human Services, and that no one else, including Chief Mueller and inspector McKie,

participated in the decision.  As a result of his decision, he gave plaintiff an ultimatum: either she found another place for her and the children to reside, or he would remove the children and place them in foster care.

In Hamik's view, plaintiff was understanding and cooperative.  She agreed to leave the residence, and to stay temporarily in a trailer that was owned or rented by Ms. Green until she could find a more permanent place.  To conclude the arrangement that emerged, Hamik presented plaintiff with a "safety plan."  Under the terms of the safety plan, plaintiff agreed that no one would be present in the residence until it was cleared by inspection and brought up to code, plaintiff and her children would stay with Janelle Greene, and plaintiff would continue to cooperate with the Department of Human Services.  Plaintiff agreed to the arrangement, and signed the safety plan.

As part of their undisputed facts, defendants note that plaintiff has alleged in her Complaint that she was removed from her home because of her race.  In her deposition, plaintiff admitted that she had no facts to support her suspicion or belief that she was removed from her trailer because of her race.

Plaintiff alleged in her Complaint that Log Lane Village had a practice or policy under which it condoned warrantless entries into the residences of Log Lane Village. Upon being asked during her deposition, plaintiff was unable to provide any facts or evidence to support her allegation.

Finally, defendants asserted as undisputed the fact that plaintiff has no facts or evidence that would tend to show that any member of the Log Lane Village Board of Trustees personally participated in any of the events surrounding plaintiff's removal

from her residence.  In her Response to defendants' Motion, plaintiff presented no evidence that would raise a genuine issue of fact in regard to defendants' assertion.

## V.  DEFENDANTS' GROUNDS FOR DISMISSAL

### A.  Qualified Immunity.

Defendants assert that they are entitled to qualified immunity in regard to plaintiff's claims against them.  Qualified immunity is a doctrine which "shields governmental officials performing discretionary functions from individual liability under 42 U.S.C. § 1983, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotations and citations omitted).  Initially, defendants must make a "prima facie showing of the 'objective reasonableness' of the challenged conduct."  Lewis, 903 F.2d at 755 (quoting Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988)).  Once defendants raise a prima facie basis for the defense of qualified immunity, the plaintiffs face a "heavy" two-part burden to show that (1) the actions of the defendants violated a federal or statutory right, and (2) the right violated was "clearly established at the time of the conduct at issue." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995); Baptiste, 147 F.3d at 1255.  A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  If plaintiffs are unable to sustain their burden, the court will find that defendants are immune from liability.

14

Defendants clearly met their burden to show a prima facie basis for the objective reasonableness of their actions.  Quite simply, the undisputed facts reflect that none of the defendants had anything to do with the removal of plaintiff from her home.  The facts show that the investigation was initiated and conducted by Douglas Hamik, who was an employee with the Department of Human Services, and that the decision with regard to the habitability of the residence was made exclusively by him.  The undisputed facts also indicate that neither Chief Mueller nor Inspector McKie participated in Hamik's decision to ensure the wellbeing of the children by obtaining their removal from the residence, either by having plaintiff remove them, or by removing them himself.  Ultimately, the undisputed facts show that plaintiff left her home voluntarily, as the result of an agreement reached between herself and the Department of Human Services.  No facts have been presented by plaintiff that would show otherwise.

Because defendants made a prima facie showing of the reasonableness of their conduct, the burden shifted to plaintiff to present evidence that satisfies her "heavy" two-part burden to show that (1) the actions of the defendants violated a federal or statutory right, and (2) the right was clearly established.  Plaintiff cannot meet her burden through conclusory statements or argument alone, as she has attempted to do in her Response to the Motion for Summary Judgment.  She must demonstrate through specific references to facts in the record that the conduct of defendants violated some right, and must show through explicit legal authority that the right was clearly established.

Plaintiff argues that qualified immunity is not available "when there is an obvious violation of clearly established principals [sic]," and argues that "[t]he Defendants have established no factual basis for a request for Qualified Immunity," or "a sound factual statement demonstrating the lack of established law." Pltf's Resp. at 14. Plaintiff has the test backwards. Defendants' burden is merely to show that some circumstances exist that warrant the granting of qualified immunity, and once that very light burden has been met the burden shifts to plaintiff. Plaintiff is the party who must demonstrate with specific facts that the actions of the defendants violated a constitutional or statutory right, and show that the right was clearly established. Plaintiff has pointed to no evidence in the record of the summary judgment proceedings that would even tend to satisfy either part of her two-part burden. Having failed to do so, defendants are entitled to qualified immunity.

### C.  No evidence of personal participation.

Defendants point out in their motion that plaintiff has asserted claims against all of the defendants in their individual capacities. To obtain individual liability, plaintiff must show that each individual personally participated in the actions that resulted in the deprivation of her constitutional or statutory rights. Bennet v. Passic, 545 F.f2d 1260, 1262 (10th Cir. 1976). Personal participation is an essential element of a § 1983 claim. Id.

The undisputed facts expressly state that no facts or evidence exists that would demonstrate personal participation by any of the defendants. Plaintiff has failed to show personal participation by any defendant, and all defendants are therefore entitled

to summary judgment in regard to the claims against them in their individual capacities.

### D.  No evidence of policy, custom or practice.

A municipal body can be held liable in a § 1983 action only when an injury was inflicted through a policy or custom that was implemented by the entity.  *See* Valanzuela v. Snider, 889 F.Supp. 1409, 1419 (D.Colo. 1995).  "The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution."  Id., citing Cannon v. City & County of Denver, 998 F.2d 867, 877 (10th Cir. 1993) (citing Monnell v. Dept. of Social Servs., 436 U.S. 658, 680 (1978).  Additionally, a state entity's liability "'may not be premised on employment of a tortfeasor with liability imposed under a *respondeat superior* theory.'"  Valanzuela, 889 F.Supp. at 1419, quoting Cannon v. City & County of Denver, 998 F.2d at 877.  State entities may be held liable only when an injury was inflicted by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.  Id.  Thus, in order to make out a claim against the town of Log Lane Village, plaintiff must present facts that would tend to prove (1) the existence of a policy or custom and (2) a direct causal link between that policy or custom and the injury alleged.  Valanzuela, 889 F.Supp. at 1419.

Defendants asserted in their undisputed facts that no evidence existed that the town of Log Lane Village perpetuated or condoned a policy, custom or practice of warrantless entries into the homes of the residents of Log Lane Village.  In her Response, plaintiff provided no facts or evidence that would show the existence of any

such policy, custom or practice.  Thus, plaintiff has failed to satisfy this portion of her burden of proof.

### E.  Summary.

Plaintiff has failed to show that any genuine issues of fact exist that would challenge the defendants' assertions that they are entitled to summary judgment for the reasons recited in the preceding sections.  In fact, plaintiff has failed in her Response to defendants' Motion for Summary Judgment to present any evidence at all.  Thus, given the undisputed facts and the legal principles presented, defendants have demonstrated that they are entitled to have their Motion for Summary Judgment granted, and to have plaintiff's claims against them dismissed.

### VI.  DEFENDANTS' REQUEST FOR ATTORNEY FEES

Defendants argue that, upon finding them to be the prevailing parties, the court should award to them their attorney fees as well as their costs because plaintiff and her counsel were never in possession of any facts that would show that any of the defendants ever ordered plaintiff to remove herself from her home.  In fact, to the contrary, the undisputed evidence, which was always in the possession of plaintiff and her counsel, demonstrated that plaintiff left her home voluntarily as part of an agreement with the Department of Human Services.  Defendants assert that an award of fees is allowed under 42 U.S.C. § 1988, and is warranted here because plaintiff's case always was groundless and frivolous.

Section 1988 allows for an award of attorney fees to the prevailing party in a case that was brought pursuant to § 1983.  The statute provides in pertinent part as

18

follows:

> In any action or proceeding to enforce a provision of section[]. . . 1983 [and other sections]. . .  of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

42 U.S.C. § 1988(b).

The United States Supreme Court has ruled that in a civil rights action a prevailing defendant is entitled to attorneys fees only if the plaintiff's underlying claim was "frivolous, unreasonable or groundless." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, (1978).  In Colorado, "[a] claim is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim," and "[a] claim is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence." Board of Com'rs, County of Boulder v. Eason, 976 P.2d 271, 273 (Colo.App. 1998), citing Western United Realty, Inc. v. Isaacs, 679 P.2d 1063 (Colo. 1984); see also Colo.Rev.Stat. § 13-17-103(1).

Plaintiff has failed here to show that the allegations in her Complaint are "supported by any credible evidence," or that any credible evidence ever existed that would support a claim against these defendants.  She has also failed to present any rational argument that is based upon the facts that are truly undisputed.  Given the above definitions, plaintiff's claims are groundless and frivolous, and were always groundless and frivolous.  Thus, defendants are entitled to be awarded the attorney fees and costs that they incurred.

19

I am mindful that an award of attorney fees should be approached with great caution, even reluctance.  This is particularly so when the litigation is based upon the civil rights act, and the assessment of fees is being considered against a plaintiff.  The granting of fees to defendants in these types of cases can have a possible chilling effect upon parties whose civil rights, in fact, have been violated.

My reluctance to recommend an award of fees is overcome by two factors.  First, I am recommending that the fee award be assessed against the attorney for plaintiff, and not against plaintiff herself.  Any prospect of a chilling effect does not exist in these circumstances.  Second, the Supreme Court has stated that "while Congress wanted to clear the way for suits to be brought under the [civil rights] Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis."  Christianburg, 434 U.S. at 420.

This case never had any factual or legal basis.  The representative from the Department of Human Services, Mr. Hamik, candidly accepted full responsibility for initiating and conducting the inspection of plaintiff's trailer home, and testified during his deposition that the decision to remove the children from the home was his and his alone.  Upon being presented with Mr. Hamik's ultimatum, plaintiff accepted and agreed to the compromise that was offered: move the children to another, temporary, residence, and do not return until the trailer home is brought up to code.  Plaintiff presented no evidence that represented either a challenge to his testimony or a challenge to his credibility.

I am also mindful of the fact that when a statutory claim for attorney fees is at

20

issue under § 13-17-101 *et seq* of the Colorado statutes, which is analogous to the present circumstances, the trial court has a duty to conduct a hearing upon the claim. *See* Pedlow v. Stamp, 776 P.2d 382, 385 (Colo. 1989).  The reason for the hearing is to enable the court to "'develop facts sufficient for the trial court to exercise its discretion.'"  Id, *quoting* Alessi v. Hogue, 689 P.2d 649, 651 (Colo.App. 1984).

I conclude that no hearing is necessary for the purpose of developing a factual basis for the exercise of discretion in regard to the award of attorney fees.  The very purpose of summary judgment proceedings is to provide both sides with the opportunity to present to the court all of the evidence that they believe supports their position with regard to the granting or denial of summary judgment.  Plaintiff, meaning counsel for plaintiff, has had the opportunity to present all of the facts that have been available since the events occurred that have given rise to this case.  As noted, counsel in plaintiff's Response has pointed to no facts that would warrant a denial of summary judgment.  More importantly, counsel has pointed to no facts that would suggest that this case ever was anything but groundless and frivolous.

However, I conclude that further proceedings are required in order for the court to develop the evidence upon which it may make findings and conclusions as to the amount of attorney fees that should be awarded to defendants.  For that reason, I recommend, if Judge Kane agrees with my findings and conclusions in regard to attorney fees, that he re-refer this case to me for purposes of determining the appropriate amount of attorney fees to be awarded against counsel for plaintiff.

## RECOMMENDATION

I therefore RECOMMEND as follows:

1.  that Defendants' Motion for Summary Judgment re Claim of Flores Plaintiffs [filed June 29, 2004] be GRANTED, and that the claims of all of the Flores plaintiffs against these defendants be DISMISSED;

2.  that counsel for plaintiff, Sara Allen, be ordered to pay the attorney fees and costs that have been incurred by these defendants in their defense against the claims of the Flores plaintiffs; and

3.  that this matter be returned to me to conduct proceedings to determine the amount of the attorney fees to be awarded to defendants.

Dated at Denver, Colorado, this day of:  December 16, 2005

BY THE COURT:

s/ O. Edward Schlatter

_____
O. Edward Schlatter
United States Magistrate Judge